

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

James O'Donohue                    36 S. Charles Street                    MAIN: 410-209-4800
Assistant United States Attorney   Suite 400
                                   Baltimore, MD 21201-3119

February 25, 2026

The Honorable Chelsea J. Crawford
United States Magistrate Judge
101 W. Lombard Street
Baltimore, Maryland 21201

> **Re:** **United States v. Melanie Pina Verde**
> **Criminal No. MJM-25-312**

Dear Judge Crawford:

The defendant, Melanie Pina Verde, is scheduled to appear before the Court on Thursday, February 26, 2026, at 2:30 p.m. for a detention hearing. Pina Verde was charged with RICO Conspiracy in violation of 18 U.S.C. 1962(d) in a superseding indictment, which was unsealed at her initial appearance February 24, 2026.

For the reasons outlined below, there is no condition or combination of conditions, short of detention, to reasonably ensure the safety of the community and ensure the defendant's appearance in Court.

## I.    Factual Background

Melanie Pina Verde is charged as part of a RICO Conspiracy perpetrated by a "clique" of MS-13 called "Los Ghettos Criminales Salvatruchas" ("LGCS").[1] Operating in Baltimore County throughout the end of 2024 and 2025, the clique was involved in firearm trafficking, drug trafficking and multiple robberies. Specifically, Ms. Pina Verde allowed LGCS to use her apartment on Straw Hat Road in Owings Mills (the "Straw Hat residence") as a meeting site and place where they could store guns and drugs. Additionally, she served as a critical intermediary between the leader of the clique (German Lisandro Benites Moreno a/k/a "Viejo Raro," "Raro," "19"), who was incarcerated in a New Jersey state prison, and the rest of LGCS in Baltimore County. Her conduct was egregious and is described below in more detail.

---

[1] "Mara Salvatrucha" or "MS-13" is a violent international gang that originated in Los Angeles in the 1980s and is comprised largely of Central Americans, particularly Salvadorans.

*Background on Pina Verde's Involvement in LGCS*

LGCS–and more specifically, Luis Melendez Serrano, William Rivera Nolasco, Alex Pena Martinez, and other members–sold at least 14 firearms to individuals who they knew, or had reason to believe, could not legally possess firearms. A search warrant of Luis Melendez Serrano's Instagram account revealed substantial evidence of firearms-related conduct and affiliation with MS-13:









Melendez Serrano's Instagram also showed a group chat called "LGCS\,,/". According to returns from Meta, the group was created on November 22, 2024, and included Melanie Pina Verde, Luis Melendez Serrano, Alex Pena Martinez, and several other LGCS members. In the group chat, the members, including Pina Verde, discussed narcotics, robberies, and general gang business. For example, on January 10, 2025, Pina Verde sent a photograph of a Hispanic male to the group and wrote, "Let's hit a lick on him." Luis Melendez Serrano responded, "Yes…he 18…we got a pic of him throwing it up." Pina Verde responded, "Right that's why I'm saying let's rob that n*gga…I can set him up." Luis Melendez Serrano wrote, "Do it."[2]

---

[2] The grammar and spelling in this exchange is cleaned up for clarity.

On February 5, 2025, Pina Verde sent a video taken of herself (still image below) to the LGCS Instagram group chat in which she claimed, "Mara Salvatrucha la controla" (i.e., "Mara Salvatrucha controls it") while displaying the devil horns sign with her hands. The devil horns hand signal is commonly associated with MS-13. A young boy depicted in a car seat next to her is also making similar hand signs.



Over the course of this investigation, investigators learned that Pina Verde allowed her residence on Straw Hat Road in Owings Mills to be used by LGCS as a hang-out spot and a location to store illegal items. For example, on March 7, 2025, several members of LGCS, including Rivera Nolasco, drove from Pina Verde's Straw Hat residence to Elizabeth, New Jersey at the direction of Viejo Raro, the clique leader. During the day, the group spoke on the phone with Viejo Raro, Pina Verde, and Luis Melendez Serrano. Viejo Raro directed the group who to meet with, including individuals who sold the LGCS members a firearm and marijuana. When the LGCS group returned to Baltimore County from New Jersey, they went to Pina Verde's Straw Hat residence and stored the purchased gun and marijuana there. At another point during the investigation, Viejo Raro, Pina Verde, Luis Melendez Serrano, and others orchestrated a shipment of crystal methamphetamine from California to the Straw Hat residence.

*LGCS's Use of Pina Verde's Residence*

On April 8, 2025, investigators executed a search warrant at the Straw Hat residence in connection with an ongoing shooting investigation in Baltimore County. During execution of the search warrant, Luis Melendez Serrano, William Rivera Nolasco, and two other members of LGCS were present. Investigators located a "Morgan Properties" letter addressed to Melanie Pina Verde with the address of the Straw Hat residence at the top, confirming her control over the property. Investigators also located and seized various items of significance, including:

- Loaded Taurus 9mm handgun bearing serial number ACM638947 under a mattress
- Additional ammunition and firearm accessory

3

- Blue bandana (blue is the color commonly associated with MS-13)
- Blue "beanie" hat with a skeleton making a devil horn hand sign
- Two machetes
- Several "Santa Muerte" depictions
- Drawing with the letters "LGCS," "13," "MS," and devil horns
- Digital scale
- Approximately $2490 in cash
- Suspected methamphetamine and cocaine in Ziploc baggies

The photographs below depict the above-described items.













On the evening of May 26, 2025, Pina Verde was arrested by members of the Baltimore County Police Department for an incident earlier that evening in which she assaulted another woman at a bar by punching and biting the other woman.[3] Pina Verde was visibly intoxicated. Officer bodyworn camera footage from the arrest depicts an angry Pina Verde in handcuffs yelling at a nearby known LGCS member (identified as "Victim 1" in the superseding indictment), "You're dead…you're dead...I'll kill you!" She then screams repeatedly in the presence of officers, "Mara Salvatrucha! Mara Salvatrucha! Mara Salvatrucha! Mara Salvatrucha! Mara Salvatrucha!" A still image of the bodyworn camera footage is below.



---

[3] According to the pre-trial services report, this case has since been dismissed in Baltimore County.

Later in this investigation, a search warrant was executed on the cell phone of Pina Verde's codefendant, Joshua Palacios. The phone contained a video from September 29, 2025, depicting a brutally violent assault and robbery of Victim 1, seemingly just as Pina Verde had threatened just several months earlier. In the graphic video, multiple LGCS members repeatedly punch Victim 1, stomp on his head, and strike him with tree branches, ultimately taking his shoes. All the while, the LGCS members are demanding he apologize to the gang's leadership, including Viejo Raro. Still images of the video are depicted below.

  

*Pina Verde's Relationship with Viejo Raro*

Throughout 2025, Pina Verde served as an intermediary between the clique leader Viejo Raro, who was incarcerated in New Jersey, and the other non-incarcerated LGCS members. On October 22, 2025, investigators executed a search warrant of Viejo Raro's prison cell in New Jersey. Investigators located a visitor log in which Viejo Raro listed Pina Verde and codefendant Nilson Montecinos as family members; a sheet of paper containing a phone number used by Luis Melendez Serrano a/k/a "Duke" during this investigation; and a photograph depicting him holding hands with Pina Verde (see below). Prison records indicate Pina Verde visited Viejo Raro in prison on October 19, 2025 – just three days before investigators searched his cell. Clearly, Pina Verde had a close relationship with the leader of this violent MS-13 clique.

6



The relationship between Pina Verde and Viejo Raro is further corroborated by her cell phone, which were obtained via search warrant in November 2025. In her phone, investigators located WhatsApp messages between Pina Verde and Viejo Raro in which she sent her Zelle, Apple, and CashApp information and discusses other LGCS members.[4] After leaving Viejo Raro's prison on October 19, 2025, Pina Verde messaged another identified member of MS-13 that Viejo Raro sends his regards. In other messages, Pina Verde discussed cocaine prices with a member of MS-13, and they emphasized not to contact "Nilson" (i.e., codefendant Montecinos) because he was recently taken to jail. That same member of MS-13 messaged Pina Verde saying he had discussed the "huge mess" with Viejo Raro and they know who is being the "rat."

Although a full financial analysis is still ongoing, investigators have already located numerous Apple Pay money transfers between Pina Verde, Viejo Raro, Luis Melendez Serrano,

---

[4] Throughout this investigation, Viejo Raro has used a contraband cell phone from prison. During the search of his cell, investigators were unable to locate the phone. However, they learned that he was transferred to his current prison facility due, at least in part, to his possession of a contraband cell phone at his prior facility. That phone was secreted in the foam insulation of a cooler box.

and others. Investigators have learned during the investigation that LGCS members owed "dues" on the 13th of each month and also sold marijuana for the gang. Based on the financial transactions reviewed to date, Pina Verde facilitated the flow of finances for the gang back to leadership (i.e., Viejo Raro).

## II.    Legal Standard and Analysis of 18 U.S.C. § 3142 Factors

The Government's burden when seeking detention based on community safety is clear and convincing evidence, and a preponderance of the evidence to determine whether the defendant is a flight risk. *United States v. Anderson*, No. ELH-19-302, 2020 WL 1929440, at *2 (D. Md. Apr. 20, 2020). When seeking a detention order, the Government may proceed by proffer of evidence. *See United States v. White*, 2015 WL 2374229, at *2 (D. Md. May 15, 2015). The factors a court must consider in determining whether a defendant shall be detained pending trial are outlined by 18 U.S.C. § 3142(g). The factors are as follows:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . a controlled substance [or] firearm;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person . . . ; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

In the instant case, the § 3142 factors establish that the defendant should be detained pending trial.

### a.    Nature and Circumstances of the Offense

Here, the nature and circumstances of the offense weigh heavily in favor of detention. As described above, this case involves firearm trafficking, drug trafficking, and violence all in support of MS-13. Pina Verde was involved in each aspect of the group's illegal activities. She allowed the LGCS clique to store guns and drugs at her residence and use it as a meeting place. She liaised with Viejo Raro in prison and the non-incarcerated members of LGCS to make sure that the gang operated effectively. And she was proud to do so, proclaiming her support for MS-13 in videos sent to the LGCS group chat and even in the presence of law enforcement. Her conduct enabled the gang to exact violence on multiple victims and distribute weapons and drugs around Baltimore County. For her actions, the Pina Verde is facing up to 20 years in prison. The nature and circumstances of these offenses clearly paint a picture favoring detention.

### b.    Weight of the Evidence

As detailed in the factual summary above, the weight of the evidence against Pina Verde is incredibly strong. The evidence includes significant digital evidence, such as social media content and cell phone extractions. It includes physical evidence like firearms, drugs, and the items recovered from Pina Verde's Straw Hat residence. And most notably, it includes the defendant's

own statements on video: "Mara Salvatrucha la controla." "Mara Salvatrucha!" "You're dead…you're dead." By her own words, the defendant has demonstrated her affiliation with MS-13 and intent on engaging in the business of the MS-13 enterprise. The weight of the evidence here favors detention.

### c.  History and Characteristics of the Defendant

Although Pina Verde has no convictions, her history and characteristics still demonstrate that if released, she will be a danger to the community and a flight risk. Specifically, over the past approximately one year, she has been in close communication, and even visited, the leader of the clique in a New Jersey prison. If she can develop this relationship with an incarcerated individual in another state, she has the ability to flee to another state. Additionally, she has family in Honduras and Mexico and a valid United States passport, again causing concern that she may flee.

According to the pre-trial services report, Pina Verde moved back in with her mother (her proposed third-party custodian) in April 2025. Her conduct in this case, however, occurred after April 2025, meaning she was continuing to engage in in this conduct, including traveling to New Jersey to meet with the clique's imprisoned leader, while living at the residence of her proposed third-party custodian.

Beyond her history and characteristics supporting a risk of flight argument, these factors also support the notion that she is a danger to the community. She has a history of brazenly admitting her affiliation with MS-13 and using that association to invoke fear in others. This factor favors detention.

### d.  Danger to the Community

While the other Section 3142 factors support detention, it is the danger posed to the community that should guide this Court's decision to detain the defendant. As described above, the defendant was involved in a violent gang responsible for selling more than a dozen firearms, distributing drugs, collecting dues, punishing enemies, and committing violence. Through it all, Pina Verde was both at the center of the operations and insulated from getting directly involved. She was able to facilitate the gang's affairs largely through her phone by communicating with leadership, taking and sending videos, and identifying potential robbery targets. If released to her mother's residence, Pina Verde could continue many of the same criminal activities in which she has been participating up to the time of her indictment.

Additionally, investigators have located specific evidence in Pina Verde's phone in which she and an MS-13 member discuss that there is a "huge mess" and they need to find the "rat." Indeed, the Pina Verde's release would jeopardize the safety of potential witnesses in this case. In any MS-13 case, witness safety is always at risk. Here, that risk is palpable given the specific evidence of the clique's members' desire to identify potential government witnesses. Given the defendant's brazenness of her MS-13 affiliation; her established relationship with LGCS leadership; and her specific message exchange about finding a "rat," the defendant's release would present a significant danger to the community.

### III.    Conclusion

For all of the reasons stated above, there is no condition or combination of conditions that would reasonably assure the safety of the community and Pina Verde's appearance in Court. The Government respectfully requests that she be detained pending trial.

Respectfully Submitted,

Kelly O. Hayes
United States Attorney

Digitally signed by JAMES
O'DONOHUE
Date: 2026.02.25 23:19:47
-05'00'

—————————————————————
James G. O'Donohue III
Stanton M.B. Lawyer
Assistant United States Attorneys

Cc via e-mail Tyler Mann, Esq.